The next case is James Steiner v. United States. Ms. Lunn is here for the appellate. Mr. Talley is here for the government. And when you're ready, Ms. Lunn, you may proceed. Good morning, Your Honors. May it please the Court. As an issue of first impression, this Court should hold that Rosamond applies retroactively on collateral review because it announced a new substantive rule that alters the scope of a criminal statute. As a result, this Court should address the merits of Mr. Steiner's Rosamond claim and reverse the District Court's denial of Mr. Steiner's 2255 motion because the government failed to prove that Mr. Steiner possessed advanced knowledge that his co-conspirators would use or carry firearms during the commission of this offense. If we accept the government's concession that Rosamond applies retroactively on collateral review, the government makes the argument that nonetheless there was sufficient evidence at the trial that Mr. Steiner had advanced knowledge that guns were going to be used during the commission of the crime. What do you have to say about that? Well, it should come as no surprise that I disagree with that, Your Honor. Frankly, there's no evidence that Mr. Steiner had advanced knowledge of the firearms. The trial evidence establishes that four men agreed to go hit a lick and Wayne Ware loaded the firearms into the blazer without trying to hide what he was doing from Mr. Steiner. But just to be clear, these are not like pocket guns, right? One of them is an AK-47? One of them is an AK-47, an army gun, and the other is a pistol. However, there's no testimony as to where in the blazer these firearms were loaded. They could have been in the back storage compartment of the blazer. Counsel, let me just say this. It seems to me that if the crime of violence at issue was armed robbery, you might have an argument. This is armed carjacking, though, right? Well, that's correct, Your Honor, but this... The guns were out before they ever decided to take the car. That's correct, Your Honor, but Roseman clarified that advanced knowledge is not strictly a temporal inquiry. Advanced knowledge is knowledge that enables a defendant to make the relevant legal choice. Therefore, when an accomplice knows nothing of a gun until it appears on the scene, he may at that late point have no realistic opportunity to... In this case, the perpetrators huddled up and discussed what to do. Your Honor, the first time in the record that we can say for sure Mr. Steiner was aware of the firearms was when his co-defendants jumped out and started shooting at the victims. So at that point, Mr. Steiner, assuming this is the first time he sees the firearms, he's 19 years old, he has no prior criminal history, and suddenly he's in a situation where Wayne Ware and Tori Wilson are holding these teenagers at gunpoint and firing their weapons whenever they feel they are not 100% in control of the situation. Now, so am I wrong, though, that at that point doesn't he also approach the girls, threaten them, get in the car, back it out of the ditch? Your Honor, I don't think there's any evidence that he was the one threatening them. I mean, we're not disputing that he assisted in the completion of this carjacking and that he went over and asked for the girls' keys, and then he helped get the Impala out of the ditch and then drove it away. However... The girls' boyfriends having fled. Yes. Like the true gentlemen that they were. Having made a valiant retreat. I'm sure they're going to get help. Well, the point I'm trying to make here is that in Rosamond, the Supreme Court explicitly rejected the government's argument that advanced knowledge exists whenever the accomplice, having learned of the firearm, continues any act of assisting the drug transaction or, in this circumstance, the crime of violence. So why don't we meet that standard? You say guns are out, and then we agree, I think, that Steiner still approaches the car, whether or not he's the one issuing the threats or not. He approaches the car, gets the keys, backs the thing out of the ditch, and at that point the carjacking has been accomplished, right? So why didn't he do at least three discreet things after the guns came out? Your Honor, again, I'm going to take us right back to Rosamond. The court explained that running away or confronting the co-defendants was not necessarily a reasonable opportunity to quit the crime because doing so would in fact increase the risk of gun violence to the defendant, other participants, and bystanders. In contrast, if completing the drug sale without incident was the best or only way to avoid danger, then the jury would be entitled to find that the defendant did not intend to facilitate a drug deal carried out with a firearm. This is exactly the same situation we have here. Mr. Steiner would have become aware of the firearms when his co-defendants started shooting, but at that point he could not have run away or confronted his co-conspirators without increasing the risk of gun violence and harm to the victims. Under the very strange circumstances of this case, where the blazer was immobilized, again, we all agree no one set out to commit a carjacking. It became a carjacking by necessity. Our point is that completing the carjacking and driving himself and his co-defendants away from the scene may very well have been the best way to avert further violence towards the victims and towards good Samaritans who were passing along their way. And another point, again related to Rosamond, is I think this case involves even less evidence of advanced knowledge than the Supreme Court had before it in Rosamond when it vacated and remanded for further proceedings. So, factually, I think Rosamond is kind of similar in that we've got a car full of co-conspirators, one of whom, who may have been Mr. Rosamond himself, jumped out and started shooting. It's a little bit unclear if the evidence that the others knew that was going to happen. But in Rosamond, the shooter then reentered the vehicle, and all three co-conspirators chased after the drug dealers, continuing to fire shots. In our case, we have two co-defendants jump out and start shooting, and we know that the shooter was not Mr. Steiner. And then we have Mr. Steiner driving his co-defendants and the Impala away from the victims. And so I think that's a big distinction to make here, is that Mr. Steiner's assistance in the carjacking actually served to remove himself and his co-defendants from the victims. Isn't that almost by definition true in a carjacking? You separate the victim from the car? Well, I suppose that's true, Your Honor. But again, we have sort of a division of labor between the elements of this carjacking offense where we have Wayne Ware and Tori Wilson doing the threatening, they're firing the weapons, and Mr. Steiner is simply—he gets the Impala out of the ditch and drives it away. And then more than that, once they are away from the victims, the police show up, they're in pursuit. Mr. Steiner makes what I think it would be fair to characterize as an attempt to quit the crime. He slows down the Impala. Jihad Walker testifies that he's fixing to tell the police what happened. But Mr. Ware and Mr. Wilson, who are in the back, and I'll remind the Court, are armed and have just been firing, start berating him, ask him, what are you doing, keep going, so he continues to drive. One thing you have to deal with is our prior opinion on direct appeal, where we said Steiner, quote, was aware that Ware had placed guns in the car before the men left. Close quote. How do you deal with that? Your Honor, I don't think that's controlling of this case at all. I mean, in that context, the Court was addressing whether Mr. Steiner had associated himself with a criminal venture, not whether he had advanced knowledge. And furthermore, this Court does not make factual findings. That's the province of the factual court, the district court. I'll accept factual court. The real court. Well, in this case, the evidence simply does not support that assertion. Okay. And so I think on this record, we've shown that Mr. Steiner's pre-Roseman conviction for aiding and abetting a 924C violation necessarily carries. So I'm still struggling with your argument that there wasn't sufficient time for him to have advanced notice and really consider this withdrawal. Seems like your argument would be stronger if the evidence was he did nothing other than get in the car when they carjacked it and take off. The evidence, that's not the evidence. The evidence is while they were at gunpoint, he went and retrieved the keys. He drove the car. I don't know how you can say that he didn't, first, know his Confederates had weapons at that point, and, two, actively participate in the carjacking. Well, I'm not saying he didn't, but Roseman requires that his intent be not just to facilitate a carjacking, but an armed carjacking. And there's no question that his actions are facilitating, in this case, the carjacking. But at this point, he does not have any reasonable opportunity to dissociate himself from the use of the firearm. And his actions at this point, getting the Impala out of the ditch and driving it away, I think are calculated in order to decrease the risk of gun violence. I'm not sure that was his intent. That was, we need a car to get out of here. Well, exactly, Your Honor, to get out of there, to preserve the status quo and decrease the risk of gun violence. Decrease the risk of us getting arrested. That as well, Your Honor, that as well. So, I mean, I think his conviction in this case necessarily carries a significant risk that he stands convicted of an act that the law does not make criminal. And I think we can make this showing from the trial transcript. As I've said before, there's no evidence of advanced knowledge, and conduct without this level of knowledge is simply non-criminal following Roseman. Another point I wanted to make in terms of their advanced knowledge before, as they're loading up the car. So the evidence is that Wayne Ware and only Wayne Ware was loading the guns into the vehicle. Jihad Walker testified as such. But I think beyond that, on cross-examination, Mr. Ware's attorney asked Jihad Walker to agree that he saw two individuals load some firearms into the back of the Chevy Blazer. And Jihad Walker corrects him, says he only saw one individual, Wayne Ware, loading firearms. So, I mean, if the point, if the conspirators collectively are aware of the guns and collectively are intending to go commit an armed robbery, there's no reason for Jihad Walker to make this odd clarification and correction. And again, Jihad Walker testified on direct examination, not that Steiner observed the firearms being loaded into the car or that he otherwise knew or was aware of the firearms, but that Ware did not try and hide the guns from Mr. Steiner. This is just, this is very odd wording, and we can't assume that this is advanced knowledge, that Mr. Steiner possessed advanced knowledge that firearms would be used in the commission of any offense until they actually appeared on the scene. Would a jury, without direct testimony, would a jury be reasonable in inferring any kind of weapon? I mean, like, I guess maybe I'm too taken by the fact that one of the two weapons was an AK, but, I mean, if it were a bazooka or a, you know, a shoulder-fired missile launcher or something, could a jury reasonably infer that Steiner would have noticed the thing being loaded into the car? Well, certainly, if he has a personal grenade launcher that's taking up the entire back seat, I don't think that could go unnoticed. But an AK-47 is not so giant that it could not be placed relatively comfortably on the floorboard of the back seat. And, again, remember, Mr. Steiner, it's undisputed, was the driver. So, presumably, he's watching the road and is not really paying attention to what his co-defendants are doing in the back seat or what there may or may not be loading in the very back of the vehicle. Is the question what the jury reasonably could have inferred, or is the question was there enough evidence that he was aware of the gun beyond a reasonable doubt? Which is the two? I think it's closer to the latter, Your Honor. The government has to prove it beyond its knowledge, beyond a reasonable doubt. Am I wrong about that or right about that? I think you're right, but I think what we should sort of examine this – I see my time has expired. May I attempt to answer? You may. Sort of through the Bailey-Boozley framework in that we're looking for whether there's a reasonable probability that Mr. Steiner stands convicted of an offense that the law no longer makes criminal. And I think, given the absence of evidence, there is such a reasonable opportunity. All right. We have your case. Thank you. We'll hear from Mr. Talley for the government. Good morning, Your Honor. Good morning. Please, the Court. My name is Brett Talley, and I'm here on behalf of the United States. I just want to start off by saying there is no such thing as a carjacking by necessity. Mr. Steiner had multiple opportunities to quit this crime. And moreover, there is evidence on the record, plenty of evidence on the record, that he had advanced knowledge of these weapons. So I'll start with the advanced knowledge, and then we can get to the crime itself. It's not just that Mr. Walker, who was the co-conspirator, said that Mr. Ware made no effort to hide the car. As my companion mentioned, he actually saw Ware load these weapons into the vehicle. And Mr. Steiner— Steiner saw him load? No, no, no, no. Mr. Walker. Mr. Walker, who's in the passenger seat. So it's Mr. Walker's car, but he didn't have his glasses, so he can't drive. So Mr. Steiner is going to drive. So these two gentlemen are sitting next to each other. Mr. Ware is putting an AK-47 into this car. Now, as Judge Newsom pointed out, can't hide this in your sleeve, can't put it in your back pocket. One of the witnesses actually testified at trial. She saw this gun, and she was struck by it. She said it was, quote, very big and very long. And it also had a banana magazine attached to it, so it's even bigger. The gun itself is part of the evidence here. As far as where the guns were located, you have to remember how this crime happened. Well, see, this is my problem now. It's possible that he could have seen him load the guns into the car, but it's also possible that he didn't, right? Well, Your Honor, I think given the fact there's testimony from a co-conspirator that there was no effort made to hide these cars, and the co-conspirator saw Ware with this gun, saw Ware bringing the gun in, and the fact this is an AK-47, a jury could determine that. Or a jury could not. Well, Your Honor— If you have to prove advanced knowledge beyond a reasonable doubt, right? If you have to prove advanced knowledge beyond a reasonable doubt, I will. Where were the guns in the car? What is the evidence established with regard whether they're in the front seat or the back seat? Well, they would be in the back seat with Mr. Ware. They would be in the back seat. Was there evidence that the guns were in the back seat? Yes, because of the way the crime happened. Okay, well, he was the driver of the car, so he was in the front seat, right? Mr. Steiner is in the front seat. He's driving the car. There's a gentleman behind him with a giant AK-47. Mr. Steiner slams on the brake. Was he holding the AK-47 in his lap, or was it down on the floorboard? Well, there's no evidence about the position of the gun, but given the size of the gun, it is difficult to imagine that someone driving a car could not see. Well, that's a good argument that you could make to a jury, but aren't we speculating here about whether or not he was holding the gun so that the driver of the car could see the gun? I mean, it's possible. It's probable. But, Your Honor— But, you know, that the government has to prove it beyond a reasonable doubt that he had advanced knowledge, right? In our—where we are right now, Your Honor, we're in a 2255 motion, right? Are we certain that the guns were in the back seat and not in the trunk? So, if I can describe the crime. So, Mr. Steiner's driving. He gets in front of this Impala, slams on the brakes, right? The Impala slams in the back of the car. At this point, the testimony is Ware and the other gentleman jump up and start shooting their guns. At that point, the people who were in the car, the young lady who's driving, she's ducking to avoid getting shot, throws the car in reverse, backs into a ditch. It's not reasonable to say that Mr. Ware jumped out, went to where the cars were connected, somehow opened the back seat, got the gun, and then started shooting. He had that gun ready to go. They were ready to commit this crime. Do we know whether or not the guns were in a storage compartment or not? Once again, Your Honor, given how this crime went down, it's not reasonable that Mr. Ware had to recover the gun from a storage compartment after Mr. Steiner initiated the wreck. I mean, it sounds, you know, remote, but could the guns have been covered with a blanket? There's no evidence there was a blanket brought into the car. I mean, that's my point. See, we don't really – we're going to have to speculate. Well, one thing, though, we don't have to speculate about is what happens once everybody jumps out of the car and the bullets start flying. Exactly. So help me with the – because I do take your – you said companion. So much nicer than I had said adversary before. Your companion's argument, I do take her position that, look, this is all happening very quickly, and Roseman says, in effect, sort of like conspiracy, like you've got to have a reasonable opportunity to withdraw yourself, and he didn't. Well, I'll take issue with one thing you said, Your Honor. This did not happen quickly. This is the keystone cops of robberies. Who said it didn't happen quickly? If you just look at what happened, they wrecked the car. They robbed the girls. Then after that, they have a conversation. One of the ladies testifies. They started talking a bit amongst themselves, and then one was more watching us. At that moment, they were still talking to themselves. One of the girls had enough time. She's calling her mom, and this is all before they decide to stop the car. Well, and they hid down in the ditch while cars were passing by, including a good Samaritan who they shot at to run off. Exactly. And they told the girls after the boyfriends had run into the woods that if you make a move, we're going to kill you. There's a point where all four of them are in the woods. This would be an excellent time for Mr. Steiner, if he wanted to withdraw from the crime, to just take off running, and that's exactly what they do, by the way. That's what the boyfriends did. That's what the boyfriends did. Just because I think it's important, Judge Wilson, I really want to lay out everything that happened here. They wrecked the car. They steal the stuff. They try to drive their car away. It's broken down. They try to get the other car. It's stuck in a ditch. There is a point where all four of them are in the ditch, and the girls are trying to drive it, and they're trying to push the car out, at which point the good Samaritan arrives. And then they run into the woods. Then they come back out. They shoot at the good Samaritan. Then they get the car out of the ditch again, and then they drive off. This was a crime with multiple opportunities to withdraw. I might agree with you, but what we're doing here is we're trying the case all over again based on Roseman, and the government didn't present the case based on Roseman. The government didn't have to prove advance knowledge, and we're saying the government needed to prove advance knowledge, and it needed to prove advance knowledge beyond a reasonable doubt. That's the problem that I'm having. Well, Your Honor, once again, we're in a 22-5 to 55 posture. Mr. Steiner did not argue this on direct appeal. We're deciding this after or we're arguing this after Roseman came out. The government doesn't have to show beyond a reasonable doubt here that Mr. Steiner had the opportunity to withdraw. Though quite frankly, Your Honor, given all of the evidence in this record, I don't think there is any reasonable doubt that Mr. Steiner had an opportunity to withdraw from this crime. And as the Supreme Court has said— But the question is could a jury find that he had no advance knowledge beyond a reasonable doubt? I might agree with you too. On this record, no. On this record, a jury could not have determined that. Did the 22-55 court make any findings about whether he had the requisite advance knowledge? The district court does say that—the problem with the district court's opinion is the district court did a lot with whether or not Roseman was retroactive. Am I right? But, yes, at some point— In the alternative. They talk about—he talks about all the opportunities he had to withdraw, and that he did have opportunities to withdraw, and that he didn't withdraw. And as the Supreme Court said in Roseman, based on that, the jury can permissibly infer from his failure to object to withdrawal that he had such knowledge. So even though the case wasn't tried on a Roseman theory, the 22-55 was litigated on a Roseman theory, and the district court says untimely, but in any event, the Roseman claim fails on the merits because there was an adequate opportunity to withdraw. I think that's correct, Your Honor. Okay. I think that's correct. Are there any more questions on the Roseman issue? Just briefly, and I know this wasn't addressed on direct, but just briefly, days came out. We provided supplemental briefing. It's true that 924C3B is no longer effective, but I think this court's precedent on that is pretty clear, the carjacking. Is the crime of violence under 924C3A? So the district court did find two things, and it didn't—you're right. The litigation of the district court was whether Roseman was retroactive. Correct, Your Honor. Your position there was it wasn't. Your position here is that it is. That is correct, Your Honor. So that was the dominant force of the opinion, it seemed to me. But on page 6 of the district court opinion, Judge Watkins said, Steiner's continued participation in the carjacking after his co-defendants fired their weapons at the victim's car is sufficient under Roseman to establish he had advanced knowledge that his cohorts would use a firearm to accomplish the crime. Talking about carjacking. Correct. And then in a footnote, he said, Contrary to Steiner's contentions, there is trial testimony suggesting Steiner had ample opportunity to abandon the crime once his co-defendants began firing their weapons. After Steiner forced the victim's car off the road and his co-defendants began firing their weapons, four alleged perpetrators convened to discuss the next move before deciding to take the victim's vehicle. Though it is unclear for how long Steiner's co-defendants considered their situation on the side of the road appears to have been more than enough time for Steiner to recognize and object to the presence of firearms. That is right, Your Honor. And that is the argument we're making today as well. Your Honor, since there are no more questions, we'll yield back the balance of our time. Thank you, Mr. Jolly. We'll hear again from Ms. Lund. Thank you, Your Honor. I'll be very brief. So the first thing I want to note is the government suggested that Mr. Steiner did not raise this issue on direct appeal. I will note that Steiner challenged the sufficiency of the evidence at trial by an appropriate motion for judgment of acquittal, arguing that the evidence was insufficient. He did not concede guilt as to any element. He preserved his challenge by presenting sufficiency of the evidence argument on appeal. And more importantly, as the government affirmatively conceded in the district court, I will quote from their brief, Steiner properly preserved his Rosemond claim at all stages in prior proceedings. I think we're with you on that. I think you preserved – you have a timely Rosemond claim. I think the force of his argument goes not to whether you're precluded from advancing it so much as whether your argument makes sense on the merits. So it seems to me this whole whether he had a chance to withdraw is easily solved by this. They huddle together. The weapons are out. Bullets have already been fired. They come up with a new plan of action, and he takes the lead. He walks over and gets the keys. Again, Your Honor, I'm not disputing that he's assisting in the carjacking, but I do dispute that he had advanced knowledge that firearms would be used in the commission of an armed carjacking. And so his assistance is facilitating the carjacking, but not – How can you argue that he should have had a chance to withdraw from an armed carjacking at the same time conceding that he actively participated in the armed carjacking? He wasn't a bump-on-the-road bystander on this. Well, this is Rosemond all over again. The defendant can continue his acts of assistance with respect to the drug sale without his intent going further for it being an armed drug sale. But the drug sale was already in place before the guns came out. That was already in motion, right? Well, yes or no. I think it was sort of a continuing offense in that they turned and kind of went after – I see my time has expired. You can continue. And I have another question. If we look at the testimony at the trial – and I'll have to look at it again. I thought the testimony was that they planned to participate in a carjacking, but they didn't plan to participate in an armed carjacking. Am I wrong about that? In terms of the meeting beforehand, they agreed to go hit a lick. And then the testimony was that they understood this to mean that they would go get some money or commit a robbery. There was no indication that anyone understood this to be an armed robbery or that firearms would be involved in the commission of the offense. Okay. All right. We have your case. Thank you, Ms. Lund, Mr. Talley. Thank you.